# No. 25-1055

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

PAUL M. DAUGERDAS,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

———————————————

ON APPEAL FROM THE ORDER AND DECISION
OF THE UNITED STATES TAX COURT

———————————————

BRIEF FOR THE APPELLEE

———————————————

ELLEN PAGE DELSOLE                    (202) 514-8128
BETHANY B. HAUSER                     (202) 514-2830
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

# TABLE OF CONTENTS

**Page**

Table of contents................................................................i

Table of authorities ..................................................... iii

Jurisdictional statement ..................................................1

Statement of the issue......................................................2

Statement of the case .......................................................3

    A.    Overview of the relevant proceedings ...................3

    B.    Restitution for tax crimes .........................................4

    C.    Daugerdas's criminal conviction and sentence.......................9

    D.    The IRS's administrative actions ............................11

    E.    The Tax Court order on Daugerdas's motion for summary judgment.................................................12

    F.    The Tax Court's bench opinion following the supplemental notice of determination .................16

Summary of argument .................................................17

Argument:

    The Tax Court correctly sustained the notice of determination regarding the lien and the payment plan ......................................18

        Standard of review ...........................................18

    A.    The IRS properly assessed the amount of restitution ordered by the District Court .............................19

        1.    The IRS's assessment authority includes certain restitution imposed by the District Court ...................19

**Page**

      2.     The IRS is authorized to assess restitution imposed for Title 18 offenses (including conspiracy to defraud the IRS) but measured by unpaid civil tax obligations imposed by Title 26 ............................ 21

      3.     The restitution was imposed for failure to pay a tax .................................................................................. 24

   B.    The IRS did not abuse its discretion in declining to withdraw the lien notice or adopt an installment agreement .......................................................................... 27

Conclusion .............................................................................. 33
Certificate of compliance ..................................................... 34
Certificate of service ............................................................ 35

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*American Boat Co., LLC v. United States,*
 583 F.3d 471 (7th Cir. 2009) ...............................................3, 7

*Anderson v. Commissioner,*
 698 F.3d 160 (3d Cir. 2012) ..................................................21

*Boechler, P.C. v. Commissioner,*
 596 U.S. 199 (2022) ........................................................ 1

*Carpenter v. Commissioner,*
 152 T.C. 202, *aff'd*, 788 F. App'x 187 (4th Cir. 2019) ..........28

*Cemco Invs., LLC v. United States,*
 515 F.3d 749 (7th Cir. 2008) .................................................3

*Dalton v. Commissioner,*
 682 F.3d 149 (1st Cir. 2012) ................................................26

*Daugerdas v. United States,*
 No. 09CR581, 2021 WL 603068 (S.D.N.Y. Feb. 16, 2021)......3

*Houston v. Lack,*
 487 U.S. 266 (1988) ............................................................ 1

*Jeffers v. Commissioner,*
 992 F.3d 649 (7th Cir. 2021) ...............................................16

*Stacy v. United States,*
 70 F.4th 369 (7th Cir. 2023) ................................................30

*United States v. Adams,*
 955 F.3d 238 (2d Cir. 2020) ...................................................6

*United States v. Anderson,*
 545 F.3d 1072 (D.C. Cir. 2008) .........................................6, 17

*United States v. Batson,*
 608 F.3d 630 (9th Cir. 2010) ................................................. 6

*United States v. Daugerdas,*
 613 F. Supp. 3d 807 (S.D.N.Y. 2020)....................................27

*United States v. Daugerdas,*
 837 F.3d 212 (2d Cir. 2016) .........................................3, 8, 19

*United States v. Hawkins,*
 392 F. Supp. 2d 757 (W.D. Va. 2005) ..................................29

*United States v. Helmsley,*
 941 F.2d 71 (2d Cir. 1991) ............................................23-25

**Cases (cont'd):** **Page(s)**

*United States v. Martinez,*
812 F.3d 1200 (10th Cir. 2015) ............................................... 26

*United States v. Meredith,*
685 F.3d 814 (9th Cir. 2012) ............................................. 5, 17

*United States v. Randle,*
324 F.3d 550 (7th Cir. 2003) .................................................. 4

*United States v. Sawyer,*
521 F.3d 792 (7th Cir. 2008) ................................................ 30

*United States v. Senty-Haugen,*
449 F.3d 862 (8th Cir. 2006) ............................................ 5, 17

*United States v. Silkowski,*
32 F.3d 682 (2d Cir. 1994) .................................................. 12

*United States v. Turner,*
718 F.3d 226 (3d Cir. 2013) ............................................. 5, 17

*United States v. Villongco,*
No. CR 07-009(BAH), 2016 WL 3747508
(D.D.C. July 11, 2016) ....................................................... 27

*United States v. Walker,*
353 F.3d 130 (2d Cir. 2003) ................................................ 28

*United States v. Wykoff,*
839 F.3d 581 (7th Cir. 2016) ............................................... 28

**Statutes:**

18 U.S.C.:

§ 371 ................................................................. 7, 18, 23, 25
§ 1341 ........................................................................ 7, 23
§ 3556 ........................................................ 5-6, 17-20, 22
§ 3563(b)(2) ................................................................. 6, 18
§ 3572(d)(3) ..................................................................... 29
§ 3583(d) ..................................................................... 6, 18
§ 3613(c) .................................................................. 9, 12, 28
§ 3663 ...................................................................... 4, 5, 17
§ 3663(a) ........................................................................... 6
§ 3663(a)(1)(A) .................................................................... 5
§ 3663(a)(3) ................................................................... 6, 17

**Statutes (cont'd):**                                                    **Page(s)**

§ 3663A ............................................................5, 11, 17-18
§ 3663A(c)(1)(A)(ii) ...................................................5
§ 3664(m) ...............................................................29
§ 3664(m)(1)(B) ........................................................28

Internal Revenue Code (26 U.S.C.):

§ 6159 ....................................................................25
§ 6201 ....................................................................19
§ 6201(a) ..............................................................6, 26
§ 6201(a)(4) ...................... 3, 6, 11-12, 16-17, 19-22, 24-25, 27
§ 6201(a)(4)(A) ........................................6, 9, 11-12, 19, 22-23
§ 6201(a)(4)(B) .......................................................7, 19
§ 6201(a)(4)(C) .......................................................7, 17
§ 6320 .....................................................................4
§ 6320(a)(1) ............................................................10
§ 6321 ..................................................................4, 9
§ 6323 ...................................................................25
§ 6323(a) ...............................................................4, 9
§ 6323(f)(1) ..............................................................9
§ 6330 ...................................................................10
§ 6330(c)(2)(B) .........................................................16
§ 6330(d) .................................................................1
§ 6330(d)(1) ..............................................................1
§ 6330(d)(3)(B) .........................................................29
§ 7201 ....................................................................7
§ 7212(a) .................................................................7
§ 7442 ....................................................................1
§ 7482(a)(1) ..............................................................2
§ 7483 ....................................................................2
§ 7502 ....................................................................1

**Miscellaneous:**                                                 **Page(s)**

Executive Grant of Clemency, December 12, 2024
(available at https://perma.cc/47y7-JTWS) ............................2

Fed. R. App. P. 13(a)(1)(A) ...............................................2

Statement from President Joe Biden on Providing Clemency for
Nearly 1,500 Individuals on Home Confinement and Pardons
for 39 Individuals Convicted of Non-Violent Crimes,
December 12, 2024 ...............................................................2

Staff of the Joint Committee on Taxation, *General Explanation of
Tax Legislation Enacted in the 111th Congress* (J. Comm.
Print 2011)..........................................................................21

## JURISDICTIONAL STATEMENT

Appellant Paul Daugerdas's jurisdictional statement is incomplete and incorrect.

The Tax Court has jurisdiction to review the Commissioner's determination after a collection due process hearing under I.R.C. §§ 7442 and 6330(d).  The Commissioner issued his determination after Daugerdas's hearing on March 6, 2020.  (Doc. 1, Ex. A.)  Daugerdas petitioned the Tax Court for review of that determination.  (Doc. 1.)  The statute requires a petition for review of such a determination to be filed within 30 days.  I.R.C. § 6330(d)(1).  The petition was signed on March 24, 2020 (Doc. 1 at 4), but not filed in the Tax Court until July 10, 2020 (Doc. 1 at 1).  In the Tax Court, timely mailing is timely filing.  I.R.C. § 7502.  The postmark on Daugerdas's petition is not clear from the record on appeal.  (Doc. 1, final page.)  There is no need to discuss the prison mailbox rule, however, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), because the 30-day period of I.R.C. § 6330(d)(1) is not jurisdictional, *Boechler, P.C. v. Commissioner*, 596 U.S. 199, 211 (2022), and the Commissioner did not raise the timeliness of the petition in the Tax Court.

On October 9, 2024, the Tax Court issued its order and decision in this case, which finally resolved all claims of all parties. (Doc. 127.) A litigant has 90 days to appeal the decision of the Tax Court. I.R.C. § 7483; Fed. R. App. P. 13(a)(1)(A). The prison mailbox rule does not apply because on December 20, 2024, Daugerdas was released from federal custody.[1] Daugerdas dated and apparently mailed his notice of appeal January 3, 2025. (Doc. 129.) This Court has jurisdiction to review the Tax Court's decision under I.R.C. § 7482(a)(1).

## STATEMENT OF THE ISSUE

Whether the Tax Court properly sustained the administrative filing of a notice of federal tax lien and the administrative denial of an installment agreement.

---

[1] *See* Statement from President Joe Biden on Providing Clemency for Nearly 1,500 Individuals on Home Confinement and Pardons for 39 Individuals Convicted of Non-Violent Crimes, December 12, 2024 (available at Statement from President Joe Biden on Providing Clemency for Nearly 1,500 Individuals on Home Confinement and Pardons for 39 Individuals Convicted of Non-Violent Crimes | The White House); Executive Grant of Clemency, December 12, 2024 (available at https://perma.cc/47y7-JTWS).

## STATEMENT OF THE CASE

### A.  Overview of the relevant proceedings

Paul Daugerdas is a former attorney and certified public accountant whose work designing and promoting the so-called "Son of BOSS" tax shelter led to extensive tax evasion and the demise of the once-prominent law firm Jenkens & Gilchrist.  *See American Boat Co., LLC v. United States*, 583 F.3d 471, 477 (7th Cir. 2009); *Cemco Invs., LLC v. United States*, 515 F.3d 749, 750 (7th Cir. 2008).  In 2014, Daugerdas was convicted by a jury of conspiracy to defraud the IRS,[2] along with multiple counts of tax evasion and related crimes; he was sentenced, *inter alia*, to pay more than $370 million in restitution to the United States.  (Doc. 15, Ex. B at 1–2, 6.)  The Second Circuit affirmed his convictions and sentence.  *United States v. Daugerdas*, 837 F.3d 212 (2d Cir. 2016).

The IRS assessed the restitution ordered by the District Court, as required by I.R.C. § 6201(a)(4).  The agency then filed a notice of federal

---

[2] The indictment alleged a multi-object conspiracy, and the jury convicted Daugerdas of all three objects: conspiracy to defraud the IRS, to commit tax evasion, and to commit mail and wire fraud.  *See Daugerdas v. United States*, No. 09CR581, 2021 WL 603068, at *1 (S.D.N.Y. Feb. 16, 2021).

tax lien ("NFTL") to make third parties aware of the underlying statutory lien. *See* I.R.C. §§ 6320, 6321, 6323(a) and (f). In the subsequent administrative hearing regarding the NFTL, and in the Tax Court and in his opening brief on appeal to this Court, Daugerdas has argued that the IRS lacked authority to assess the restitution. Daugerdas has also argued that the IRS had no discretion to reject his proposal of an installment agreement that he urges was consistent with the schedule of payments in the District Court's order of restitution, as modified by that court. (*See* Doc. 15, Ex. B at 7, Ex. D.). The Tax Court sustained the IRS's administrative actions with regard to both the filing of the NFTL and the rejection of the installment agreement. Daugerdas appeals.[3]

## B.    Restitution for tax crimes

District courts have no inherent power to order restitution, and thus may only order defendants to pay restitution as authorized by statute. *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003). The Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, and

---

[3] Daugerdas also opposed a proposed levy. The Tax Court ruled for Daugerdas regarding the levy, and the IRS has not appealed.

the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, both authorize courts to order defendants to pay restitution to the victims of their crimes for certain specified offenses.  *Id.*  The MVRA requires the sentencing court to order restitution to the victims of, *inter alia*, Title 18 offenses against property that are committed by fraud or deceit.  18 U.S.C. § 3663A(c)(1)(A)(ii).  The VWPA authorizes the sentencing court to order restitution when sentencing a defendant convicted of a Title 18 offense.  18 U.S.C. § 3663(a)(1)(A).  Thus, a sentencing court "shall order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663."  18 U.S.C. § 3556.  Sections 3663 and 3663A both apply to Title 18 criminal tax offenses, such as conspiracy to defraud the IRS.  *See, e.g.*, *United States v. Turner*, 718 F.3d 226, 236 (3d Cir. 2013); *United States v. Meredith*, 685 F.3d 814, 827 (9th Cir. 2012); *United States v. Senty-Haugen*, 449 F.3d 862, 865 (8th Cir. 2006).

By its terms, 18 U.S.C. § 3663A does not apply to tax offenses charged under Title 26.  Section 3663 does not specifically reference Title 26 offenses, but it provides that the sentencing court may "order restitution in any criminal case to the extent agreed to by the parties in

a plea agreement." 18 U.S.C. § 3663(a)(3). And the probation and supervised release statutes authorize district courts to order restitution as a condition of supervised release or probation, "but not subject to the limitation of section 3663(a) or 3663A(c)(1)(A)." 18 U.S.C. §§ 3563(b)(2), 3583(d). Accordingly, for criminal tax offenses charged under the Internal Revenue Code (Title 26), the court may order restitution as an independent part of the sentence if the defendant has agreed to pay restitution as part of a plea agreement, and the court may always order restitution as a condition of supervised release or probation. *See United States v. Adams*, 955 F.3d 238, 250 (2d Cir. 2020); *United States v. Anderson*, 545 F.3d 1072, 1077-78 (D.C. Cir. 2008); *United States v. Batson*, 608 F.3d 630, 633 (9th Cir. 2010).

In 2010, Congress enacted I.R.C. 6201(a)(4), which provides for restitution-based assessments. Under this provision, when a District Court enters a restitution order pursuant to 18 U.S.C. § 3556 "for failure to pay any tax imposed under this title," *i.e.*, the Internal Revenue Code, the IRS is "authorized and required" to "assess and collect the amount of restitution . . . in the same manner as if such amount were such tax." I.R.C. §§ 6201(a), 6201(a)(4)(A). The IRS can

assess the restitution after all appeals of the restitution order are concluded (or after the right to appeal has expired), and the defendant may not challenge the amount of restitution in any proceeding authorized by the Internal Revenue Code.  I.R.C. § 6201(a)(4)(B), (C).

## C.    **Daugerdas's criminal conviction and sentence**

Daugerdas was a central figure in the design, promotion, and implementation of the so-called "Son-of-BOSS" tax shelter; indeed, the sentencing judge described him as the "architect" and "mastermind" of the individual version of that tax shelter.  *See* Doc. 15, Ex. A at 72 (describing Daugerdas as "the architect of the greatest tax fraud in US history"), 73 ("[y]ou were the mastermind of the criminal scheme").  As detailed by this Court in *American Boat*, 583 F.3d at 474–477, that shelter produced effectively unlimited paper losses with no real loss or risk of loss.  In connection with these tax shelters, Daugerdas was convicted by a jury of one count of conspiracy to defraud the IRS under 18 U.S.C. § 371; four counts of tax evasion under I.R.C. § 7201; one count of a corrupt endeavor to obstruct and impede the internal revenue laws under I.R.C. § 7212(a); and one count of mail fraud under 18

U.S.C. § 1341.  (Doc. 15, Ex. B at 1-2.)[4]  He was sentenced to 180 months of imprisonment (Doc. 15, Ex. B at 3), though he later had his period of confinement commuted to time served.  *See* n.1, *supra.*  He was also sentenced to three years of supervised release.  (Doc. 15, Ex. B at 4–5.)  And he was ordered to make restitution to the United States Treasury in the amount of $371,006,397.00.  (Doc. 15, Ex. B. at 6.)

As originally ordered by the District Court, Daugerdas was to pay interest on the restitution unless the restitution was paid in full "before the fifteenth day after the date of the judgment."  (Doc. 15, Ex. B at 6.) Payments were to be made "in monthly installments of 10% of his gross monthly income over a period of supervision to commence 30 days after the date of the judgment."  (Doc. 15, Ex. B at 6.)  The District Court also ordered Daugerdas to forfeit $164 million in criminal proceeds.  (Doc. 15, Ex. B at 7.)  Despite the District Court's statement that payments should commence within 30 days after the date of judgment and that

---

[4] Daugerdas's criminal activity was not limited to the design and sale of the fraudulent tax shelters: he himself also utilized one or more varieties of the Son-of-Boss shelter for each of the tax years between 1993 and 2001.  During that period, Daugerdas collected over $105 million in fee income but, based on his use of the shelters, paid less than $7,500 in federal income taxes.  *Daugerdas*, 837 F.3d at 220.

"[u]nless the court has expressly ordered otherwise . . . payment of criminal monetary penalties is due during imprisonment" (Doc. 15, Ex. B at 6, 7), Daugerdas contended that the payments were to be made "over a period of supervision" which did not begin while Daugerdas was still incarcerated. (Doc. 15. Ex. C.) Daugerdas thus requested that the District Court "make clear that Mr. Daugerdas's obligation to make restitution payments does not arise until 30 days after his release from incarceration." (Doc. 15, Ex. C.) The government did not object. (Doc. 15, Ex. C.) The District Court granted the request. (Doc. 15, Ex. D.)

## D.   The IRS's administrative actions

Acting according to I.R.C. § 6201(a)(4)(A), the IRS assessed the tax and interest imposed as restitution. Both the order of restitution and the assessment of the restitution as a tax create unrecorded statutory liens in favor of the United States upon taxpayer's property and rights to property. 18 U.S.C. § 3613(c); I.R.C. § 6321. To secure the tax lien against innocent third parties, however, the Government must file "notice thereof" in the local recorder's office. I.R.C. § 6323(a), (f)(1). On April 24, 2018, while Daugerdas was still incarcerated (Doc. 36 at 2),

the IRS filed a notice of federal tax lien ("NFTL") with the recorder of deeds in Cook County, Illinois.  (Doc. 114, Ex. 2-R).

By statute, after an NFTL is filed, the IRS must notify the taxpayer of the filing of the NFTL and of the taxpayer's right to a hearing.  I.R.C. § 6320(a)(1).  The IRS duly notified Daugerdas and, shortly thereafter, informed him that it intended to collect the tax by administrative levy, a notice that also entitled him to a hearing.  (Doc. 114 at Exs. 2-R, 3-R.  *See* I.R.C. § 6330)  Daugerdas promptly requested a hearing in response to both notices.  (Doc. 114 at Ex. 4-R.)  After the administrative hearing, the IRS Independent Office of Appeals ("Appeals") determined that it "could not find a basis for lien withdrawal."  (Doc. 114, Ex. 1-R at 2.)  Appeals also found that because Daugerdas did not provide records substantiating his current ability to pay, his proposal for collection alternatives, including an installment agreement, was rejected, and the proposed levy action was sustained. (Doc. 114, Ex. 1-R at 1–3.)

Daugerdas petitioned the Tax Court for review of that administrative determination.  (Doc. 1.)

**E.     The Tax Court order on Daugerdas's motion for summary judgment**

In the Tax Court, Daugerdas moved for summary judgment, arguing that the assessments were invalid because, in his view, the IRS was authorized to assess restitution only as it became due according to the Schedule of Payments adopted by the District Court, and since he was still incarcerated at that time, no restitution was yet due under that schedule.  (Doc. 9.)  After that motion was fully briefed, the Tax Court ordered the parties to respond to the issue whether the IRS's authority to assess restitution imposed "for failure to pay any tax imposed under this title," I.R.C. § 6201(a)(4)(A), extended to the convictions for mail fraud and conspiracy under Title 18.  (Doc. 26.)  In response, the Commissioner explained (Doc. 31) the restitution here at issue was ordered based on Daugerdas's participation in a conspiracy to defraud the IRS by evading taxes owed by certain of his clients.

In a January 10, 2022 order, the Tax Court held that the IRS had authority under I.R.C. § 6201(a)(4) to assess "restitution ordered for tax-related, title 18 offenses" (Doc. 36 at 4), including conspiracies that caused a loss to the IRS.  As the Tax Court noted (Doc. 36 at 4), the District Court's authority to impose restitution derives from 18 U.S.C.

§ 3663A, and that statute draws no distinction between those crimes codified in Title 18 and those codified in Title 26. And although a financial loss is not an element of conspiracy, the Tax Court observed, under the criminal law "restitution may be ordered for losses that are directly caused by the conduct of the offense." (Doc. 36 at 5, citing *United States v. Silkowski*, 32 F.3d 682, 689 (2d Cir. 1994).) The Tax Court therefore concluded that the evasion of Daugerdas's client's tax liabilities, though not restitution for his own personal failure to pay his own personal tax liability, was still restitution imposed for "failure to pay any tax imposed under this title." I.R.C. § 6201(a)(4)(A).

In the same order, the court also sustained the filing of the NFTL. (Doc. 36 at 8.) The court noted that under the criminal law, "[e]ven before section 6201(a)(4)'s enactment," the government has an automatic lien "for the full amount of the restitution," upon all the criminal defendant's property and rights to property from the moment the criminal judgment is entered, even if the defendant does not have a "current payment obligation" under the restitution order. (Doc. 36 at 6, citing 18 U.S.C. § 3613(c).) In the same way, the court reasoned, the tax lien that arises upon assessment, and the NFTL securing it against

third parties, do "not accelerate" Daugerdas's "payment obligations under the restitution order or impose a current payment obligation." (Doc. 36 at 7.)

As to the administrative levy, and the proposed installment agreement, the Tax Court remanded the matter to Appeals. (Doc. 36 at 11.) In so doing the court noted that Appeals's determination that Daugerdas had the present ability to pay was in tension with the District Court's prior conclusion that he did not have the ability to pay while incarcerated. (Doc. 36 at 9.)

After reviewing the case on remand, the Office of Appeals issued a supplemental notice of determination, dated April 2, 2024. (Doc. 114, Ex. 22-J at 1.) Appeals again found that Daugerdas did "not meet the criteria for withdrawal of the lien." (Doc. 114, Ex. 22-J at 2.) Appeals also concluded, after consultation with the Office of IRS Chief Counsel, that "the government has a right to immediately collect full payment of the restitution or seek payment through a payment arrangement." (Doc. 114, Ex. 22-J at 2.) Although IRS Collection reviewed Daugerdas's financial information statement "and determined [he had] no ability to pay," Collection ultimately found that certain real property

was held by Daugerdas's wife as his nominee which could be a source of payment. (Doc. 114, Ex. 22-J at 2.) For these reasons, Appeals sustained the lien and proposed levy. (Doc. 114, Ex. 22-J at 2.) On April 4, 2024—immediately after the supplemental notice of determination was issued—counsel for the Commissioner filed a status report notifying the Tax Court that the supplemental notice had been issued. (Doc. 65; *see also* Doc. 66 (Daugerdas's status report filed the next day).)[5]

### F. The Tax Court's bench opinion following the supplemental notice of determination

Reviewing the supplemental notice of determination, the Tax Court issued a bench opinion (Doc. 126) in which the court reiterated its holding that the IRS had the authority to assess the restitution as a tax. (Doc. 126 at 4.) The court also reiterated its ruling sustaining the filing of the NFTL. (Doc. 126 at 15–18.) The court declined to sustain

---

[5] A prior, undated version of the supplemental notice of determination was, according to the Appeals Officer's notes, mailed to Daugerdas on March 27, 2024. (Doc. 114, Ex. 23-J.) That unsigned draft version of the notice indicated that the Appeals Officer was "willing to side with your argument that you don't have any interest in the property." (Doc. 114, Ex. 23-J at 4.) Accordingly, in that draft version of the notice, Appeals did not sustain the levy and accepted the "collection alternative" of "can't pay." (Doc. 114, Ex. 23-J at 4.)

the administrative decision upholding the levy (Doc. 126 at 18–23), a decision the Commissioner has not appealed.

The Tax Court also ruled that the Commissioner had not abused his discretion in rejecting Daugerdas's proposed installment agreement. (Doc. 126 at 23–24.) That proposed agreement would have tied IRS collection to the payment schedule adopted by the District Court in the criminal case. (Doc. 126 at 23.) Relying on prior Tax Court cases, the Tax Court held that the Commissioner's collection authority, even for restitution-based assessments, is "independent from Title 18 and the underlying criminal procedures." (Doc. 126 at 24.) Moreover, the Tax Court noted, Daugerdas had not provided current information regarding his ability to pay to the Appeals Officer reviewing the proposed installment agreement. (Doc. 126 at 24.)

Daugerdas now appeals.

## SUMMARY OF ARGUMENT

The Tax Court correctly upheld the Commissioner's administrative filing of an NFTL to secure the tax lien, and correctly concluded that the Commissioner did not abuse his discretion in rejecting an installment agreement offered by Daugerdas premised on

his inability to pay. The Commissioner had the authority to assess the entire amount of restitution determined by the District Court as a tax pursuant to I.R.C. § 6201(a)(4). The Commissioner also had the ability to use all his standard administrative collection tools to collect that tax, notwithstanding the payment schedule adopted by the District Court. Daugerdas's arguments to the contrary are without merit.

## ARGUMENT

**The Tax Court correctly sustained the notice of determination regarding the lien and the payment plan**

### Standard of review

This Court reviews the Tax Court's grant of summary judgment *de novo*. *Jeffers v. Commissioner*, 992 F.3d 649, 653 (7th Cir. 2021). Where the taxpayer's underlying liability is not properly at issue, this Court reviews the administrative determinations of the IRS Independent Office of Appeals for abuse of discretion. *Id.* Under I.R.C. § 6330(c)(2)(B), a taxpayer may challenge "the existence or amount" of his tax liability in a 6330 hearing only if that taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Daugerdas had the opportunity to challenge the *amount* of restitution in his

sentencing hearing; accordingly, he could not (and did not) challenge the *amount* of restitution in the Tax Court, and does not challenge it in this appeal. *See* I.R.C. § 6201(a)(4)(C). He did not, however, have a prior opportunity to challenge whether the Commissioner had the authority, under I.R.C. § 6201(a)(4), to assess the restitution determined by the District Court. That issue, which was first raised by the Tax Court (Doc. 26 at 2–5), and which is raised by Daugerdas in his brief on appeal, is an issue of law reviewed *de novo*.

A. **The IRS properly assessed the amount of restitution ordered by the District Court**

1. **The IRS's assessment authority includes certain restitution imposed by the District Court**

As discussed above, criminal restitution imposed under 18 U.S.C. § 3556 includes both mandatory restitution under 18 U.S.C. § 3663A and discretionary restitution under 18 U.S.C. § 3663. 18 U.S.C. § 3556. Restitution for tax offenses charged under Title 18 is mandatory, while discretionary restitution for offenses charged under Title 26 is available under 18 U.S.C. § 3663(a)(3) when the defendant agrees to pay restitution as part of a plea agreement. *Turner*, 718 F.3d at 236; *Meredith*, 685 F.3d at 827; *Senty-Haugen*, 449 F.3d at 865; *Anderson*,

545 F.3d at 1077-78. Restitution for Title 26 offenses is also available as a condition of supervised release or probation. *See* 18 U.S.C. §§ 3563(b)(2), 3583(d).

Here, because Daugerdas was convicted of conspiracy to defraud the IRS under 18 U.S.C. § 371, restitution was mandatory under 18 U.S.C. § 3663A. (Doc. 15, Ex. B. at 1–2.) Relying on its authority under 18 U.S.C. §§ 3556 and 3663A, the U.S. District Court for the Southern District of New York ordered Daugerdas to pay over $370 million in restitution to the United States Treasury. (Doc. 15, Ex. B at 6.) The District Court ascribed this tax loss to a Title 18 offense, to wit, the conspiracy to defraud the IRS and evade income taxes. 18 U.S.C. § 371. Calling Daugerdas "the mastermind of the criminal scheme" and noting that his personal "ill-gotten gains totaled more than $97 million," the District Court made Daugerdas jointly and severally liable with his co-conspirators—*i.e.*, his former colleagues and clients—for the tax losses attributable to the evasion of their tax liabilities. (Doc. 15, Ex. A at 73–74.) Because the United States Treasury was the victim of Daugerdas's crimes, the court ordered the restitution payable to the IRS.

After the Second Circuit affirmed Daugerdas's convictions and sentence in his direct criminal appeal (*see* Daugerdas, 837 F.3d at 218; *see also* I.R.C. § 6201(a)(4)(B)), the Commissioner assessed the restitution ordered by the District Court. Section 6201 of the Internal Revenue Code expressly instructs that the Secretary of the Treasury "shall assess and collect the amount of restitution under an order pursuant to section 3556 of title 18, United States Code, for failure to pay any tax imposed under this title in the same manner as if such amount were such tax." I.R.C. § 6201(a)(4)(A). Because the restitution assessed by the Commissioner was restitution imposed "under an order pursuant to section 3556 of title 18," the assessment of the restitution was authorized by I.R.C. § 6201(a)(4), as the Tax Court correctly held.

> **2. The IRS is authorized to assess restitution imposed for Title 18 offenses (including conspiracy to defraud the IRS) but measured by unpaid civil tax obligations imposed by Title 26**

In his brief on appeal, Daugerdas argues (Br. 9-11) that this assessment was unauthorized. In essence, his argument is that restitution may be *imposed* under the MVRA only for Title 18 offenses, but may be *assessed* under I.R.C. § 6201(a)(4) only for Title 26 offenses, thus conveniently inventing a loophole through which his own $371

million liability—imposed under the MVRA and assessed under I.R.C. § 6201(a)(4)—may escape.

The plain language of Section 6201(a)(4), however, is not so limited. The statute instructs the Secretary (using the imperative "shall") to "assess . . . the amount of restitution" imposed "under an order pursuant to section 3556 of title 18, United States Code" for "failure to pay any tax imposed under this title." I.R.C. § 6201(a)(4). Under the plain language of the statute, therefore, it is the relevant unpaid civil tax obligation that must be imposed by the Internal Revenue Code; section 6201(a)(4) says nothing to limit the range of underlying criminal offenses that may have caused that civil tax obligation to go unpaid. The limiting condition on the order of restitution is merely that it be "imposed . . . under an order pursuant to section 3556 of title 18," an authority that points to both the mandatory and discretionary restitution statutes. Since the restitution here at issue was ordered pursuant to 18 U.S.C. § 3556, and the *amount* of the restitution was measured by the amount of the civil tax obligations imposed by Title 26 that went unpaid as a result of the offense of which Daugerdas was convicted, *viz.*, the Title 18 offense of conspiracy to

defraud the IRS, the restitution at issue fell within the assessment authority conferred by I.R.C. § 6201(a)(4), and thus was properly assessed by the IRS.

The history of I.R.C. § 6201(a)(4) confirms this reading of the statute. The Staff of the Joint Committee on Taxation's *General Explanation of Tax Legislation Enacted in the 111th Congress* (J. Comm. Print 2011), commonly known as the "Blue Book," confirms that the assessment authority, I.R.C. § 6201(a)(4), was enacted to resolve a technical problem that was creating unwarranted inefficiencies in the courts and in tax administration. *Id.* at 459–461. The inefficiency was this: in cases where a crime led to the failure to pay a civil tax liability, the District Court in the criminal proceeding would need to make at least a provisional determination of tax due, because "the amount of restitution ordered is computed by reference to the taxes that would have been owed but for the criminal offenses charged." *Id.* at 461. But because the civil tax liability had to be formally determined in a separate, civil process (a process that included Tax Court proceedings and the right to appeal to the Courts of Appeals, *see*, *e.g.*, *Anderson v. Commissioner*, 698 F.3d 160 (3d Cir. 2012)), it often happened that

when the criminal paid that restitution, the IRS did not yet have a civil tax assessment on its books against which it could set off that payment. *Id.* Section 6201(a)(4) resolved that technical problem by authorizing and instructing the Commissioner to assess as a tax an amount equal to "the amount of restitution" imposed by the criminal court "for failure to pay any tax imposed under this title." I.R.C. § 6201(a)(4)(A).

Daugerdas argues (Br. 13–15) that the assessment authority codified in I.R.C. § 6201(a)(4) is limited to restitution contained in plea agreements. Nothing in the text of the statute itself or its legislative history suggests any such limitation. To the contrary, by its plain language the assessment authority applies to all restitution, measured by civil tax liability, imposed "under an order pursuant to section 3556 of title 18, United States Code." I.R.C. § 6201(a)(4)(A). In other words, the assessment provision potentially covers all restitution orders that might create the type of accounting difficulty that the provision is designed to solve. Daugerdas's preferred reading of the statute would leave out restitution imposed in cases like his, restitution that creates the same type of accounting problem. And it leaves the problem

unaddressed in cases like this one for no reason whatsoever.  The statutory language does not demand such a result.

### 3. The restitution was imposed for failure to pay a tax

Daugerdas also argues that although the restitution at issue concededly "was measured, calculated, and determined based upon unpaid taxes and interest" (Br. 15), it was, in his view, somehow not compensation for harm caused by the "failure to pay any tax" within the language of the statute, *see* I.R.C. § 6201(a)(4)(A).  He claims that "unpaid taxes" represent "tax loss," whereas the "failure to pay any tax" is, according to him (Br. 16), some other thing.  To the contrary, we submit that the "failure to pay any tax" leads inexorably to the existence of "unpaid taxes."  Thus, harm measured by "unpaid taxes," and compensated for by the imposition of restitution, is necessarily not only a "tax loss," but also harm caused by the "failure to pay a tax."

Daugerdas's reliance (Br. 16) on the Second Circuit case *United States v. Helmsley*, 941 F.2d 71 (2d Cir. 1991), is misplaced.  In *Helmsley*, as here, the criminal defendant was convicted of conspiracy to defraud the United States and of mail fraud under 18 U.S.C. §§ 371 and 1341, respectively.  *Id.* at 90, 93–94.  In *Helmsley*, as here, the District

Court imposed restitution for the harm caused to the IRS by the conspiracy and mail fraud. *Id.* at 78. As Daugerdas notes (Br. 16), the Second Circuit upheld the imposition of restitution in that case, restitution measured by the unpaid civil taxes due. *Id.* at 101, 102. The *Helmsley* case thus supports the result in this case.

Daugerdas hangs his hat on the Second Circuit's observation, in *Helmsley*, that conspiracy and mail fraud are not simple tax evasion but "are crimes distinct from their underlying predicate acts and purposes, and involve additional harms." *Id.* at 101. That observation, however, does nothing to undermine the conclusion that *one* of the harms that may be caused by a conspiracy to commit tax evasion is that taxes are evaded, *i.e.*, they go unpaid, *i.e.*, there is a "failure to pay . . . tax" within the meaning of I.R.C. § 6201(a)(4).

The Second Circuit in *Helmsley* had no need to concern itself with the IRS's assessment authority under I.R.C. § 6201(a)(4), as that statute had not yet been enacted. But the court did address the underlying accounting problem, noting its view that "any amount paid as restitution for taxes owed must be deducted from any judgment entered for unpaid taxes in [a related] civil proceeding." *Helmsley*, 941

F.3d at 102. The fact that *Helmsley*, which like this case concerned a conspiracy to defraud the IRS under 18 U.S.C. § 371, threatened to produce the same type of accounting problem addressed by the assessment authority codified in I.R.C. § 6201(a)(4), is a further indication that the assessment authority properly covers such circumstances.

**B. The IRS did not abuse its discretion in declining to withdraw the lien notice or adopt an installment agreement**

Once restitution has been assessed under I.R.C. § 6201(a)(4), the IRS is authorized to collect it "in the same manner as if such amount [of restitution] were such [unpaid civil] tax." The IRS's collection authority includes, but is not limited to, the power to file notices of federal tax lien protecting the government's interest against innocent third parties, *see* I.R.C. § 6323, and the ability to enter into installment agreements with taxpayers, *see* I.R.C. § 6159. In this case the IRS filed an NFTL, which Appeals did not withdraw. (Doc. 114, Ex. 1-R at 2.) Appeals also declined to adopt an installment agreement that Daugerdas proposed. (Doc. 114, Ex. 22-J at 2.) Both actions were reasonable, and neither was an abuse of discretion. In reviewing a collection determination

made in an administrative hearing, there is no need to go farther. *Dalton v. Commissioner*, 682 F.3d 149, 156 (1st Cir. 2012) (adopting a "reasonableness standard" for certain legal issues presented in IRS collection hearings).

Daugerdas argues (Br. 18–21) that any collection in excess of the amounts provided for in the payment schedule would violate the terms of the criminal judgment. But this argument is beyond the scope of this appeal. Here, the Tax Court did not sustain the IRS's proposed levy (Doc. 127), and the Government did not appeal that ruling. The issues on appeal are only whether the Commissioner abused his discretion in making the administrative determinations that were the subject of the hearing, *i.e.*, in filing an NFTL for the entire amount of restitution, in declining to withdraw the lien notice, and in declining to adopt an installment agreement.

That said, the Tax Court correctly determined (Doc. 126 at 24) that the IRS's authority to collect restitution-based assessments under I.R.C. § 6201(a) "is independent from Title 18 and the underlying criminal procedures." The cases Daugerdas relies upon to refute this proposition (*see* Br. 19–20), *United States v. Martinez*, 812 F.3d 1200

(10th Cir. 2015) and an unpublished district court order, *United States v. Villongco*, No. CR 07-009(BAH), 2016 WL 3747508(D.D.C. July 11, 2016), do not concern collection by the IRS, and thus cannot speak to the scope of the IRS's authority under I.R.C. § 6201(a)(4).

Daugerdas's argument fails because it assumes that the payment schedule included in the criminal judgment prevents additional collection of the restitution ordered. But the record in Daugerdas's criminal case demonstrates that the entire amount of the restitution was due at the time of sentencing. The District Court ordered Daugerdas to pay post-judgment interest on the restitution, and the interest began accruing 15 days after the date of the judgment. (Doc. 15, Ex. B at 6.) At no point during the criminal proceedings did the court indicate that Daugerdas was not obligated to pay restitution in full or that the payment schedule would prevent collection of restitution by the United States. And when the District Court denied Daugerdas's motion for compassionate release in 2020, the court found that Daugerdas's failure to pay "a cent of restitution" weighed against granting his motion. *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020). This finding directly contradicts Daugerdas's

contention that he did not owe restitution until his period of supervision began.

When a criminal court orders the entire restitution due at the time of sentencing, even if it also enters a payment plan that reflects the criminal defendant's present inability to pay, the entire amount ordered as restitution is an automatic lien upon all the criminal defendant's property and right to property, notwithstanding any payment plan. 18 U.S.C. § 3613(c). *See also* 18 U.S.C. § 3664(m)(1)(B) (authorizing victim to convert restitution order into an abstract of judgment for the full amount of the restitution order, which "shall be a lien on the property of the defendant"); *United States v. Walker*, 353 F.3d 130, 132-33 (2d Cir. 2003) (recognizing the limited significance of payment schedule); *Carpenter v. Commissioner*, 152 T.C. 202, 217, *aff'd*, 788 F. App'x 187 (4th Cir. 2019) (collecting cases). *See also United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016). The administrative filing of the NFTL to secure the Government's interest in Daugerdas's property and rights to property is thus consistent with the restitution order.

Similarly, the decision by Appeals not to enter an installment agreement is consistent with the rule, long applied in criminal cases unrelated to taxation where restitution is enforced under 18 U.S.C. § 3664(m), that the Government may collect the entire amount of restitution if it is due immediately, notwithstanding any payment schedule based on the defendant's financial circumstances.  As one such criminal court has explained, the entire point of restitution—to make whole the victim of a crime—"would be undermined if the court-imposed payment schedule created a right in the defendant to pay no more than the ordered installments." *United States v. Hawkins*, 392 F. Supp. 2d 757, 759 (W.D. Va. 2005).  Indeed, the statute permitting payment plans in criminal cases also permits those plans to be modified to require payment in full.  18 U.S.C. § 3572(d)(3).  Because ability to pay is subject to change over time (unlike the underlying tax liability), the Commissioner's collection authority is similarly flexible.  *See* I.R.C. § 6330(d)(3)(B) (Appeals retains jurisdiction to adjust its determinations in light of changed circumstances).  Thus, as this Court has held, a criminal court's "implementation of minimum monthly payments does not modify the underlying tardiness of [the criminal defendant's]

restitution debt." *Stacy v. United States*, 70 F.4th 369, 376 (7th Cir. 2023).

Daugerdas's claims about the separation of powers (Br. 20–21) are wholly misplaced. As this Court observed in rejecting a similar argument about the Bureau of Prisons' power to collect despite a payment plan, collection of a debt due and owing is not a "delegation" of judicial power at all, for "[i]n civil litigation, a judgment creditor chooses how soon (if at all) to collect," yet " no one thinks of this as a delegation of judicial power to a private litigant." *United States v. Sawyer*, 521 F.3d 792, 794 (7th Cir. 2008).

## CONCLUSION

The decision of the Tax Court should be affirmed.

Respectfully submitted,

/s/ Bethany B. Hauser

| | |
|---|---|
| ELLEN PAGE DELSOLE | (202) 514-8128 |
| BETHANY B. HAUSER | (202) 514-2830 |

*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

MAY 14, 2025

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

    1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]    this document contains  **6,097**  words, **or**

    [ ]    this brief uses a monospaced typeface and contains \_\_\_\_\_ lines of text.

    2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]    this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]    this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   /s/ Bethany B. Hauser

Attorney for  Commissioner of Internal Revenue

Dated:    May 14, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of May, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Paul M. Daugerdas
816 Forest Ave.
Wilmette, IL 60091-1718


/s/ Bethany B. Hauser
BETHANY B. HAUSER
*Attorney*